UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**GEORGE L. RUSSELL, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

September 26, 2018

MEMORANDUM TO PARTIES RE:   Curtis Williamson v. Richard Graham, Jr., et al.
Civil Action No. GLR-17-1915

Dear Parties:

Pending before the Court are: (1) Defendants Wexford Health Sources, Inc. ("Wexford"), Robustianno Barrera, MD, Kim Martin, RN, Janet Gilmore, PA, Peggy Mahler, PA, Mahboob Ashraf, MD, and Ava Joubert, MD's (collectively, the "Medical Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 42); and (2) Defendant Richard Graham, Jr.'s (together with the Medical Defendants, "Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 55). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motions.

Plaintiff Curtis Williamson is an inmate housed at Western Correctional Institution ("WCI") in Cumberland, Maryland. (Compl. at 1, ECF No. 1).[1] He is wheel-chair dependent and suffers from chronic pain related to a back condition. (Id. at 3; Joubert Aff. ¶ 3, ECF No. 42-5). On July 7, 2017, Williamson filed a four-Count Complaint against Defendants, alleging: (1) the discontinuation of his Oxycodone medication caused him to suffer pain and experience withdrawal symptoms (Count I); (2) Mahler authorized or allowed a pharmacist to discontinue his Ultram medication, again causing him withdrawal symptoms (Count II); (3) Wexford's medical department and staff "are denying" him a post-surgery appointment (Count III); and (4) medical providers' response to his urinary incontinence forced him to live in "inhumane, unsanitary, degrading and humiliating conditions" (Count IV). (ECF Nos. 1, 30). Williamson seeks compensatory and punitive damages and injunctive relief. (Compl. at 3).

On January 24, 2018, the Medical Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 42). On February 8, 2018, Williamson filed an Opposition, (ECF No. 50), to which the Medical Defendants filed a Reply on February 22, 2018, (ECF No. 54). On March 8, 2018, Graham filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 55). Williamson filed an Opposition to Graham's Motion on March 22, 2018. (ECF No. 57). To date, the Court has no record that Graham filed a Reply.

Defendants style their Motions as motions to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters

---

[1] Unless otherwise noted, the facts outlined here are set forth in Williamson's Complaint (ECF No. 1). To the extent the Court discusses facts not alleged in the Complaint, they are uncontroverted, and the Court views them in the light most favorable to Williamson. Citations to the Complaint refer to the pagination the Court's Case Management and Electronic Court Filing system assigned.

outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Here, the parties were on notice that the Court might resolve Defendants' Motions under Rule 56 because both Graham and the Medical Defendants styled their Motions in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Accordingly, the Court treats Defendants' Motions as motions for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Williamson brings 42 U.S.C. § 1983 (2018) claims predicated on allegations of improper medical care. "Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the [E]ighth [A]mendment." Jones v. Granger, 935 F.Supp. 670, 673 (D.Md. 1996) (quoting Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990)). An inmate asserting the constitutional violation must show that the defendant "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Deliberate indifference requires a showing that a prison official "subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "Mere negligence or malpractice does not rise to a constitutional level." Justice v. Green, No. JFM-11-266, 2012 WL 366875, at *8 (D.Md. Feb. 12, 2012). Nor do disagreements between an inmate and his or her medical provider "about the proper course of treatment" establish an Eighth Amendment violation. Id.

Here, as to Count I of the Complaint, the record does not show that Defendants discontinuing Williamson's Oxycodone medication amounts to deliberate indifference. Oxycodone is a pain killer derived from opiates, which Williamson had used since October 2015. (Med. Defs.' Mot. Dismiss Summ. J. ["Defs.' Mot."] Ex. 1 at 2, ECF No. 42-4). According to Defendants' medical evidence, within four days of Williamson submitting a sick call slip,[2] Barrera evaluated Williamson, substituted his Oxycodone order with an Ultram (or Tramadol) prescription, and renewed his prescription for Gabapentin (or Neurontin), an anti-seizure medication used to treat neuropathic pain. (Id. at 2, 6−8; Joubert Aff. ¶ 4). Barrera also prescribed Cymbalta, medication used in adults to treat chronic pain and muscle or joint pain. (Joubert Aff. ¶ 4). Williamson, however, declined it. (Id.). Against this evidence, it is clear that medical providers attempted to treat Williamson's condition by providing him with alternate pain killers. To the extent Williamson is dissatisfied with the type of pain killer prescribed, such a disagreement does not provide a sufficient basis for finding a violation of the Eighth Amendment. See Justice, 2012 WL 366875, at *8.

The Court similarly rejects Williamson's contention that he should have been admitted to the infirmary upon arriving at WCI "to be gradually weaned off of the Oxicodone [sic]." (Compl. at 4). Williamson has failed to submit any medical evidence supporting this contention. See McKeown v. Pacheko, No. 1:10-1606-RMG, 2011 WL 5104621, at *2 (D.S.C. Oct. 27, 2011) ("Although Plaintiff contends that he should have been 'weaned off' Neurontin rather than switched to only Cymbalta, there is no medical or psychiatric support for this contention."). Again, Williamson merely disagrees with the

---

[2] At WCI, an inmate can fill out a sick call slip to seek medical evaluation and treatment. (Graham Decl. ¶ 4, ECF No. 55-2). Wexford, WCI's private medical contractor, collects and reviews the slips. (Id. ¶¶ 3−4). Wexford's medical personnel then determine an appointment date and time. (Id. ¶ 4).

course of treatment his physicians provided, which does not show an Eighth Amendment violation. See Justice, 2012 WL 366875, at *8.

To the extent Williamson contends that the delay in his receipt of ordered medication following the discontinuation of his Oxycodone prescription supports his § 1983 claim, the Court disagrees. He admits that the "delay in [his] care in not receiving [his] medication 'as ordered'" resulted from the fact that "the ordered medication had been lost" or "misplaced." (Compl. at 4). Defendants' mishandling of the ordered medication may constitution negligence or malpractice; it does not, however, rise to a violation of the Eighth Amendment. See Justice, 2012 WL 366875, at *8 (citing Johnson, 145 F.3d at 168). Accordingly, the Court will grant summary judgment in Defendants' favor as to Count I.

Count II alleges that Mahler "authorize[d] and/or allow[ed]" a pharmacist "under her authority" to discontinue his Ultram medication, causing him to suffer withdrawal symptoms for a week. (Compl. at 4). This claim fails for at least two reasons. First, the record fails to support the allegation that Mahler authorized a pharmacist to discontinue the Ultram medication. Defendants' evidence reflects that the alleged pharmacist, Dr. Na Odifie, is employed by Correct Rx, and not Wexford. (Joubert Aff. ¶ 5). Consequently, "Dr. Odifie is not, as alleged by Plaintiff, under the authority of N.P. Mahler or any other member of the medical department." (Id.). Williamson has not submitted evidence delineating what personal knowledge he possesses concerning the manner in which WCI, Wexford, and Correct Rx delegate their decision-making authority concerning medical-related matters. "Evidence submitted . . . in opposition to a motion for summary judgment must be . . . based on personal knowledge." Harris v. Mayor & City Council of Balt., 797 F.Supp.2d 671, 679 (D.Md. 2011); accord Fed.R.Civ.P. 56(c)(4). Having failed to demonstrate such knowledge, Williamson has not raised a genuine dispute of material fact as to whether Mahler authorized the discontinuation of his medication.

Second, the discontinuation of Ultram did not amount to a deliberate indifference towards Williamson's medical needs. At best, the record evidences a disagreement over the benefits of continuing Williamson's Ultram prescription. Medical staff generally believed that Ultram would not "contribute to the best possible health outcomes," especially given it and other opioids "cause tolerance to their therapeutic effect and physical dependence" and, thus, are not intended for long-term relief of chronic pain. (Joubert Aff. ¶ 5). In addition, Odifie recommended changing Williamson's prescription for Naproxen, a nonsteroidal anti-inflammatory drug used to treat pain or inflammation, from "as need" to "regular use." (Id.). Thus, medical staff sought to implement an alternate regimen designed to alleviate Williamson's pain while mitigating countervailing risks associated with his then-prescribed pain killer. Accordingly, the Court will grant summary judgment in Defendants' favor as to Count II.

As to Count III, the record lacks evidence of deliberate indifference towards Williamson's request for a post-surgery appointment. Williamson did not request the appointment in a sick call slip and did not raise the issue with any provider until May 13, 2016. (Id. ¶ 6). Beverly McLaughlin, RNP, requested an orthopedic consultation for Williamson. (Defs.' Mot. Ex. 1 at 26−27). The Regional Medical Director approved the request in October 2016. (Joubert Aff. ¶ 6). Williamson saw Dr. Charles Park for a follow up on December 2, 2016 but declined to discuss his condition in the presence of the escorting guards. (Id.). A follow-up appointment was made with Dr. Park on February 3, 2017. (Id.). The two met again on March 10, 2017, during which time Dr. Park recommended "a posterior lumbar decompression with an interbody fusion and instrumented fusion with interbody cages from L3−L4." (Id.). On June 28, 2017, Williamson met with McLaughlin for a pre-surgery health assessment. (Med. Defs.' Mot. Ex. 1 at 114−17). Williamson filed his Complaint nine days later, (ECF No. 1), and only four days thereafter, Dr. Park performed the posterior decompression and fusion of Williamson's L3−L4 vertebrae, (Joubert Aff. ¶ 6). Against this evidence, Williamson's general averments that Wexford's medical department and staff "are denying" his request for a follow-up appointment fail to create a genuine dispute of fact as to

whether Defendants acted deliberately indifferent towards the request. Accordingly, the Court will grant summary judgment in Defendants' favor on Count III.

Nor does the record show deliberate indifference towards Williamson's alleged urinary incontinence, as alleged in Count IV. In mid-August 2016, a nurse and, then, a physician met with Williamson after he first submitted a sick call slip complaining about the condition. (Joubert Aff. ¶¶ 7−8). The physician placed an order for adult diapers, disposable bedding underpads, and plastic bags. (Id. ¶ 8) Two weeks later, a mid-level provider placed a one-year order for Williamson's urinary incontinence supplies, which was subsequently increased. (Id.). Williamson then agreed to a nurse's plan of substituting condom catheters for the diapers. (Id.). By July 21, 2017—three weeks after filing his Complaint—Williamson reported that the incontinence resolved and that he was able to control his urine with only one accident while working. (Id.). He subsequently reported urinary incontinence associated with back pain and recommenced using a condom catheter. (Id.). Based on this evidence, the Court finds that Defendants routinely treated Williamson's alleged urinary incontinence with various supplies. Accordingly, the Court will grant summary judgment in Defendants' favor as to Count IV.[3]

For the foregoing reasons, Defendants' Motions (ECF Nos. 42, 55), construed as motions for summary judgment, are GRANTED.[4] Judgment is ENTERED in favor of Defendants. Despite the informal nature of this memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly and CLOSE this case, and mail a copy of this memorandum to Williamson at his address of record.

Very truly yours,

/s/
George L. Russell, III
United States District Judge

---

[3] For the same reasons, to the extent Williamson asserts an Eighth Amendment claim against Dr. Ashraf on the basis that he was the "provider at the time [Williamson] was denied urinary incontinence supplies," (Mot. Request ¶ (1), ECF No. 30), the claim is meritless.

[4] Williamson alleges that, as a result of him bringing this lawsuit, Dr. Joubert is punishing him by continuously decreasing his pain medication until it is completely discontinued. (Mot. Request ¶ (1)). He specifically highlights Joubert's mentioning of the lawsuit, adding that "[t]his occurred the [sic] same time she decreased my Ultram pain medication 100mg" and that "she will decrease it another 100mgs." (Id.). To the extent Williamson asserts a First Amendment claim for retaliation, it too is meritless. Undisputed evidence shows that medical staff "recently commenced tapering Plaintiff off Tramadol" because it and other opioids cause physical dependence. (Joubert Aff. ¶ 5). In fact, Williamson acknowledges that when he transferred to WCI in March 2016—over a year before he brought this lawsuit—WCI had already begun disposing of other opioids like Oxycodone "as a narcotic not allowed at WCI." (Compl. at 3). Thus, there is no genuine dispute of fact that any reduction in Williamson's medication resulted from an institutional policy WCI implemented well before he sued Joubert. Accordingly, the Court will grant summary judgment in Joubert's favor as to this claim.